[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-10962

Non-Argument Calendar

_____

KATHERINE FLEMING,

Petitioner,

*versus*

MERIT SYSTEMS PROTECTION BOARD,
U.S. DEPARTMENT OF INTERIOR,

Respondents.

_____

Petition for Review of a Decision of the
Merit Systems Protection Board
Agency No. AT-1221-11-0460-B-3

_____

Before JORDAN, LAGOA, and HULL, Circuit Judges.

PER CURIAM:

Katherine L. Fleming, *pro se*, petitions for review of a final order of the Merit Systems Protection Board ("MSPB"), which affirmed an administrative law judge's denial of Fleming's request for corrective action as to the termination of her federal employment. Fleming asserts that she engaged in protected whistleblower activity that caused (1) her termination and (2) her supervisor to create a hostile work environment for her that in turn caused Fleming's conduct and performance problems. The administrative law judge and then the MSPB concluded that Fleming would have been terminated in the absence of her protected activity and that her supervisor did not create a hostile work environment in retaliation for her protected activity. After review, we dismiss in part and deny in part Fleming's petition for review.

## I.    FACTUAL BACKGROUND

### A.    September 18, 2005 Hiring

Fleming was employed by the National Park Service ("NPS") as a museum curator at the Everglades National Park (the "Everglades Park"). The NPS is part of the Department of the Interior (the "agency"). Fleming was appointed for a term that began on September 18, 2005 and was not to exceed October 17, 2006. Upon successful completion of her one-year probationary

period, the term could be extended up to four years. Nancy Russell was Fleming's direct supervisor at the Everglades Park.

In early October 2005, less than a month after Fleming began work, Fleming participated in an NPS project at the Dry Tortugas National Park (the "Dry Tortugas Park") to stabilize cannons damaged by a hurricane. Fleming and Cheri Vitez, a museum technician, painted the cannons using a zinc primer and were exposed to toluene, a toxic solvent. Vitez began to feel ill and returned to quarters. Later that evening, Fleming became frustrated with her supervisor Russell and yelled at her "for her total insensitivity toward [the members of the project team] and her lack of interest in [Vitez's] present condition."

## B.    January 26, 2006 Suspension

While Russell supervised Fleming, Brien Culhane was Russell's supervisor at the Everglades Park. On January 6, 2006, Russell e-mailed a six-page summary of her concerns about Fleming's conduct and performance to Culhane and a human resources officer at the agency. A week later, on January 13, 2006, Russell proposed terminating Fleming and sent Culhane an 11-page summary of Fleming's conduct and performance issues that began in October 2005.

In her 11-page summary, Russell wrote that Fleming (1) repeatedly failed to follow instructions; (2) had not made satisfactory progress in processing the museum's collection; (3) failed to respond to her requests for updates; (4) had a condescending attitude and questioned her expertise; (5) removed

files from her office without authorization; and (6) refused to meet with her to establish a performance plan.  Despite Russell informing Fleming that her conduct was unacceptable, the situation had become "untenable" and Fleming's continued employment was "counterproductive to the museum program."

On January 26, 2006, after receiving Culhane's input, Russell informed Fleming of a proposed three-day suspension "for misconduct."

In her February 6, 2006 written response to Culhane, Fleming (1) denied all charges of misconduct and (2) lodged several complaints against Russell.  Fleming alleged that she and a co-worker were exposed to hazardous zinc paint and toluene while painting cannons at the Dry Tortugas Park.  Fleming calls this her whistleblowing activity: her reporting and complaining about toxic-chemicals exposure at the Dry Tortugas Park.

In a February 7, 2006 memorandum to Culhane, Russell denied Fleming's accusations.  Culhane investigated the charges made by Russell and Fleming.  Culhane met with Fleming multiple times, as well as 24 other individuals.

In April 2006, Culhane suspended Fleming for two days, beginning on May 1, 2006.[1]  Culhane sent a memorandum to

---

[1] On May 9, 2006, after serving a two-day suspension, Fleming filed a grievance and challenged her suspension.  During the grievance process, the Everglades Park, based on the agency's recommendation, rescinded Fleming's suspension because it was "procedurally defective."

Fleming that detailed his findings. Culhane sustained the four charges that Fleming: (1) failed to provide information Russell requested for her performance plan; (2) refused to come to Russell's office when requested; (3) failed to use the requested format for inventory, or to send inventory until requested four times; and (4) failed to provide the requested level of detail in her weekly reports to Russell. For the other charges, Culhane was unable to determine whether the alleged events occurred because Russell's instructions were given verbally and were not witnessed by a third party.

Culhane also concluded that none of Fleming's charges against Russell could be sustained.

## C.    Bailey's May 31, 2006 Report

Problems persisted with Fleming's work at the Everglades Park. So Culhane asked Lisbit Bailey, an experienced archivist from a different national park, to conduct an independent review of Fleming's work. Bailey conducted a site visit from May 8 to May 12, 2006. Bailey prepared two assessments of Fleming's conduct and performance. Her first report, dated May 31, 2006, noted that Fleming "seemed to be working in a way that was not consistent with standard archival methodology." Fleming's work "raised red flags," and it was apparent that Fleming "was not consulting the National Park Service Records Disposition Schedule." Bailey also reported that during a close-out meeting, Fleming was "downright recalcitrant and unprofessional." The report contained next steps

for Fleming. Bailey concluded that she was "cautiously optimistic" and that "the project was back on track."

## D.    Bailey's June 8, 2006 Report

After reviewing progress on the project and a follow-up phone conversation with Russell, Bailey prepared a second report, dated June 8, 2006. Bailey noted that: (1) the situation with Fleming was "dismaying"; (2) Fleming appeared to "want to work in a vacuum"; (3) Fleming "used the principle of original order to ultimately bring the project to a grinding halt, again"; and (4) Bailey was not certain that Fleming knew what she was doing. To Bailey, Fleming's performance and conduct were concerning, as she "ha[d] gone back to delving into the boxes and [wa]s not dealing with the database." As it stood, Fleming was "not going to complete the project no matter how much time she ha[d]." This threatened the funding for the Everglades Park and the region.

## E.    June 12, 2006 Termination

On June 12, 2006, Culhane terminated Fleming due to unsatisfactory conduct and performance, effective June 24, 2006.

Then, from 2006 to 2023, a lengthy and complicated procedural history followed, with two hearings before the first administrative law judge ("ALJ"), three appeals to the MSPB, an appeal to the Federal Circuit, a reassignment to a new ALJ, that new ALJ's decision denying corrective action, and the MSPB affirming that new ALJ's decision. We review each in order to explain later Fleming's claims in this appeal.

## II.    PROCEDURAL HISTORY

After her termination, Fleming filed a complaint with the United States Office of Special Counsel ("OSC"), wherein she asserted she was terminated in retaliation for numerous alleged protected activities.  Federal whistleblowers are protected from retaliatory personnel actions by government agencies and may file a claim seeking "corrective action."  5 U.S.C. §§ 2302(b)(8), 1221(a).  After exhausting her administrative remedies with the OSC, Fleming in 2011 filed an individual right of action appeal (the "agency appeal") requesting corrective action.

### A.    Proceedings Before First ALJ: 2011-2015

In her agency appeal, Fleming asserted that she was terminated in retaliation for numerous alleged disclosures that she claimed were protected whistleblowing activity.  Her agency appeal identified "[t]ermination during probationary or initial service period" as the sole agency personnel action or decision she appealed.  Throughout her agency appeal, Fleming alleged that the adverse action taken against her for whistleblowing was "termination."   Fleming claimed that any conduct and performance issues "were the result of being under duress due to repeated attempts by [Russell] to undermine [Fleming] and create a hostile work environment."

On May 6, 2011, an ALJ, without holding a hearing, dismissed Fleming's agency appeal for lack of jurisdiction after determining that her alleged disclosures were not protected activity.  Fleming appealed the ALJ decision to the MSPB.

On review, the MSPB vacated the ALJ's decision as to only one disclosure: her February 6, 2006 disclosure to Culhane about her toxic-chemicals exposure during the Dry Tortugas Park cannon stabilization project (the "Dry Tortugas disclosure"). The MSPB vacated the ALJ's decision and remanded.

Following a hearing on remand, the ALJ denied Fleming's request for corrective action, finding that Fleming failed to prove a protected disclosure. The ALJ concluded that Fleming's Dry Tortugas disclosure did not reveal material information that was hidden and not known to Culhane. Alternatively, even assuming Fleming's disclosure was protected and was a contributing factor to her termination, the ALJ determined that the agency proved by clear and convincing evidence that it would have terminated Fleming in the absence of the disclosure. Fleming appealed to the MSPB.

On review, the MSPB vacated the ALJ's second decision because (1) the Dry Tortugas disclosure was protected even though it revealed information that Culhane, the decisionmaker, already knew and (2) the ALJ's analysis of the purportedly clear and convincing evidence did not comply with the standard articulated in *Whitmore v. Department of Labor*, 680 F.3d 1353 (Fed. Cir. 2012). The MSPB remanded for the ALJ to reconsider the record as a whole and make thoroughly reasoned findings addressing the evidence supporting its conclusions and the countervailing evidence.

23-10962                Opinion of the Court                9

After another hearing on remand, the ALJ denied Fleming's request for corrective action.  Although Fleming made a protected disclosure that was a contributing factor to her termination, the ALJ found that the agency demonstrated by clear and convincing evidence that it would have terminated Fleming absent her disclosure.  To reach this conclusion, the ALJ applied the three factors articulated in *Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999).  We set forth the *Carr* factors later in our analysis.

Fleming petitioned the MSPB for review of the ALJ's third decision.  On review, the MSPB modified the ALJ's decision because the ALJ erred by taking an overly restrictive view of the second *Carr* factor, but otherwise affirmed the ALJ's decision.  The third *Carr* factor was not at issue.  Thus, the MSPB weighed the first and second *Carr* factors and agreed with the ALJ that the agency had shown by clear and convincing evidence that it would have terminated Fleming absent her disclosure.

## B.    Federal Circuit: 2016-2017

Fleming petitioned for review in the Court of Appeals for the Federal Circuit.  *See Fleming v. Dep't of the Interior*, 646 F. App'x 994, 998 (Fed. Cir. 2016), *mandate recalled and opinion vacated* (Aug. 30, 2016).  In May 2016, the Federal Circuit affirmed the MSPB's decision.  *Id.*

In July 2016, Fleming obtained an audio recording of her second hearing before the ALJ, which included a conversation between the ALJ and the court reporter, in which the ALJ discussed

the strength of Fleming's case. Based on this recording, Fleming moved the Federal Circuit to rescind its decision and reopen her case. In August 2016, the MSPB moved the Federal Circuit to intervene and for remand. The Federal Circuit granted the MSPB's motion, recalled the mandate, vacated its decision, and remanded the case. It denied Fleming's motion to reopen as moot.

On remand, the MSPB vacated its final order and remanded the case to a new ALJ for adjudication.

## C.    Proceedings Before Second ALJ: 2017-2023

In her prehearing brief on remand, Fleming asked the new ALJ to rule in her favor "without further hearings." During a prehearing conference on August 8, 2017, Fleming confirmed that she did not want another hearing, and the agency did not oppose her request. The new ALJ thus issued a decision based upon the written record.

The new ALJ denied Fleming's request for corrective action. The ALJ found that the agency proved by clear and convincing evidence that it would have terminated Fleming, even in the absence of her Dry Tortugas disclosure. The ALJ's decision was based on an application of the *Carr* factors and addressed the agency's evidence about Fleming's conduct and performance issues and Fleming's countervailing evidence.

Fleming argued that her conduct and performance issues were the result of a hostile work environment that her supervisor Russell created in retaliation for her Dry Tortugas disclosure. However, the new ALJ found, *inter alia*, that it was "undisputed"

that any conflict between Russell and Fleming began shortly after Fleming was hired, and Fleming made her February 6, 2006 protected Dry Tortugas disclosure only after Russell, on January 26, 2006, notified her of the proposed suspension. Fleming's proposed suspension "itself followed Ms. Russell's prior effort to terminate [Fleming] in January 2006," also before Fleming's protected Dry Tortugas disclosure. As shown above, on January 6, 2006 and then again on January 13, 2006, Russell in fact had written detailed summaries of Fleming's conduct and performance issues. Moreover, the evidence showed that Russell's "supervisory depredations" were unrelated to Fleming's protected disclosure.

Fleming filed a petition for review with the MSPB. The agency did not respond.

In a final order, the MSPB affirmed the new ALJ's denial of Fleming's request for corrective action. The MSPB determined that the new ALJ reviewed the relevant documentary evidence and hearing testimony and considered Fleming's arguments that her conduct and performance issues were the result of a hostile work environment. The MSPB found the key issue was not whether supervisor Russell mistreated Fleming (*i.e.*, a hostile work environment), "but whether the alleged mistreatment occurred in retaliation for [Fleming's] whistleblowing activity." The MSPB determined that, even taking Fleming's allegations about the alleged mistreatment of Fleming and her non-whistleblowing co-worker as true, the evidence of such mistreatment indicated supervisor Russell "treated her employees poorly regardless of

whether they were whistleblowers," and thus Russell's alleged treatment of Fleming was not based on her whistleblowing.

The MSPB also concluded that "although agency officials involved in the termination decision may have had some motive to retaliate against [Fleming] for her protected disclosure, the evidence in support of the decision to terminate her was strong and there [wa]s no evidence that the agency treated nonwhistleblowing employees differently for similar misconduct."

Fleming timely filed the instant petition for review of the MSPB's decision.

### III.    STANDARD OF REVIEW

Section 7703(b) of Title 5 provides for judicial review of decisions of the MSPB. 5 U.S.C. § 7703(b). The Federal Circuit previously had exclusive jurisdiction over petitions for review of MSPB decisions that involved only whistleblower claims, but in 2012 Congress expanded that jurisdiction to include "any court of appeals of competent jurisdiction." *See Kelliher v. Veneman*, 313 F.3d 1270, 1274 (11th Cir. 2002); *compare* 5 U.S.C. § 7703(b) (effective Oct. 30, 1998), *with* 5 U.S.C. § 7703(b)(1)(B); *see also* Pub. L. No. 112-199, § 108(a), 126 Stat. 1465 (2012) (codified as amended at 5 U.S.C. § 7703(b)(1)).[2]    We thus now have jurisdiction over

---

[2] Initially, this provision was set to "sunset," *see* All Circuit Review Extension Act, Pub. L. No. 113-170, 128 Stat. 1894 (2014), but in 2018, the All Circuit Review Act, Pub. L. No. 115-195, 132 Stat. 1510 (2018), permanently authorized the change.

Fleming's petition that raises only whistleblower claims. *See* 5 U.S.C. § 7703(b)(1).

Even before this expanded jurisdiction, we had jurisdiction over petitions for review of MSPB decisions in "mixed cases" that involved whistleblower claims coupled with discrimination claims. *Kelliher*, 313 F.3d at 1274. And as to whistleblower claims in those mixed cases, we applied the statutory, deferential standard of review set forth in 5 U.S.C. § 7703(c) that governs whistleblower claims before the Federal Circuit. *See id.* at 1274-75. So we now use that same § 7703(c) standard of review here.

Specifically, § 7703(c) provides that a court shall hold unlawful and set aside any agency action, findings, or conclusions found to be:

> (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence[.]

5 U.S.C. § 7703(c). Under this deferential § 7703(c) standard, we review MSPB decisions "only to ensure that the [MSPB's] determination is (1) not arbitrary or capricious, (2) [not] made without regard to law, or (3) not based on substantial evidence." *Kelliher*, 313 F.3d at 1276. We do not substitute our judgment for that of the MSPB, but rather only seek to ensure the decision was "reasonable and rational," and "[w]e do not re-weigh or re-examine the credibility choices made by the fact finder." *Id.* at 1276-77.

"The petitioner bears the burden of establishing reversible error in the [MSPB's] final decision." *Sistek v. Dep't of Veterans Affs.*, 955 F.3d 948, 953 (Fed. Cir. 2020).

## IV.    DISCUSSION

We address two threshold issues before the merits of Fleming's arguments on appeal.

### A.    Proper Party to Appeal

Fleming named both the MSPB and the agency as respondents. However, only the agency that took the personnel action—the Department of the Interior—is properly the respondent. *See* 5 U.S.C. § 7703(a)(2). This is because 5 U.S.C. § 7703(a)(2) provides as follows:

> The [MSPB] shall be named respondent in any proceeding brought pursuant to this subsection, *unless the employee* or applicant for employment *seeks review* of a final order or decision *on the merits on the underlying personnel action* or on a request for attorney fees, *in which case the agency responsible for taking the personnel action shall be the respondent*.

(emphasis added). Fleming challenges the agency's personnel action against her. Therefore, we dismiss the petition with respect to the MSPB, leaving the agency as the sole respondent.

### B.    Fleming's Bias Arguments

Fleming argues that the first ALJ was biased against her, made improper credibility findings, and improperly weighed the

evidence.  The MSPB found that Fleming's concerns "were already addressed in the [MSPB's] previous remand orders and resulted in the [MSPB] remanding the case to a different administrative judge in a different office for adjudication."

Nonetheless, in this appeal Fleming asserts that her concerns about the first ALJ's bias "were never properly addressed" by the MSPB because the second ALJ "failed to address the impact of [the first ALJ's] prejudicial assessments on rulings."  While difficult to decipher, we understand Fleming to be arguing that because the creation of the agency record was overseen by an allegedly biased ALJ, it cannot be the basis for the second ALJ denying her corrective action.  The problem for Fleming is her argument ignores the fact that she asked the second ALJ to rule in her favor "without further hearings."  So the record created before the first ALJ remains the proper record that the second ALJ had to consider and did consider anew.  Fleming's bias arguments thus lack merit.

We now turn to the Fleming's whistleblower claims.

## C.    General Principles: Whistleblower Claims

Under the the Whistleblower Protection Act ("WPA"), a federal agency cannot take "a personnel action with respect to any employee . . . because of" the employee's disclosure of information that the employee reasonably believes evidences "gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety."  5 U.S.C. § 2302(b)(8).    Fleming's whistleblower activity is the

disclosure of toxic chemicals used on the Dry Tortugas Park project.

A claim for unlawful retaliation for whistleblowing is analyzed under a burden-shifting scheme. *Whitmore*, 680 F.3d at 1367. To make a prima facie case, a claimant must establish that: (1) the acting official had the authority to take a personnel action; (2) the aggrieved employee made a protected disclosure; (3) the acting official used his authority to take a personnel action against the employee after she made a protected disclosure; and (4) the employee's protected disclosure was a contributing factor in the agency's personnel action. *See Chambers v. Dep't of Interior*, 602 F.3d 1370, 1376 (Fed. Cir. 2010).

If the claimant makes a prima facie case, the burden shifts to the agency to show by clear and convincing evidence that it would have taken the same personnel action in the absence of the protected disclosure. *See* 5 U.S.C. § 1221(e)(2); *see also Whitmore*, 680 F.3d at 1367. To determine whether the agency has met its burden, the MSPB weighs the three *Carr* factors: (1) "the strength of the agency's evidence in support of its personnel action"; (2) "the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision"; and (3) "any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated." *Carr v. Soc. Sec. Admin.*, 185 F.3d 1318, 1323 (Fed. Cir. 1999).

### D.     Fleming's Termination

The agency does not challenge whether Fleming established a prima facie case as to her termination. Instead, Fleming challenges the MSPB's February 10, 2023 final decision that the agency showed by clear and convincing evidence that it would have taken the same personnel action in the absence of Fleming's protected Dry Tortugas disclosure. Therefore, we assess only whether the agency met that burden.

Here, substantial evidence supports the MSPB's affirmance of the second ALJ's finding that the agency proved by clear and convincing evidence that it would have terminated Fleming, regardless of her protected Dry Tortugas disclosure. *See* 5 U.S.C. § 1221(e)(2); *see also Whitmore*, 680 F.3d at 1367. The MSPB reviewed the second ALJ's findings, reviewed the evidence and hearing testimony, and expressly considered and rejected each argument raised by Fleming in her petition for review.

The standard is not what we would decide *de novo*, but whether the MSPB's determination is supported by substantial evidence on the record as a whole. *Parker v. U.S. Postal Serv.*, 819 F.2d 1113, 1115 (Fed. Cir. 1987); *see also Kelliher*, 313 F.3d at 1274-75. Considering the three *Carr* factors together, the MSPB did not err in concluding that "[i]n sum, although agency officials involved in the termination decision may have had some motive to retaliate against [Fleming] for her protected disclosure, the evidence in support of the decision to terminate her was strong and there [wa]s

no evidence that the agency treated non[-]whistleblowing employees differently for similar misconduct."

Under the first *Carr* factor, the reasons for Fleming's removal were supported by evidence from Culhane, Russell, and archivist Bailey. Fleming's poor conduct and performance began shortly after she was hired, and Russell early on expressed her concerns about Fleming's work to Culhane, including in a six-page summary dated January 6, 2006 and an 11-page summary dated January 13, 2006. This was before Fleming had made her protected Dry Tortugas disclosure. After the agency issued Fleming a two-day suspension, Fleming's conduct and performance problems continued. Bailey, an independent archivist, assessed Fleming's conduct and performance and identified issues. Bailey also concluded that the Everglades Park might lose funding due to Fleming's work performance. While Fleming presented argument that her conduct and performance were satisfactory and that any performance issues were attributable to the stress of Russell's hostile work environment towards her, the second ALJ determined "that the deciding official [Culhane] had strong reasons to credit [Russell's] account of [Fleming's] conduct and performance problems and their potential impact on the agency's mission."

As to the second *Carr* factor, the MSPB noted that, based on their positions, Russell and Culhane "may have had a motive to retaliate" against Fleming, but any such motive was not strong. The protected disclosure did not implicate either Russell or Culhane because the Dry Tortugas Park authority, not Russell, was

responsible for the cannon painting project. Regardless, the strong evidence in support of the agency's action here outweighs any possible motive to retaliate on the part of the agency officials who were involved in terminating Fleming.

Finally, with respect to the third *Carr* factor, there was no evidence that the agency treated non-whistleblowing employees differently than Fleming for similar conduct. The evidence in the record, Fleming's contention that Russell subjected a non-whistleblowing employee to the same kind of alleged mistreatment Fleming received, indicates that Russell's alleged mistreatment of Fleming was unrelated to Fleming's whistleblowing.

Accordingly, pursuant to the deferential standard set by 5 U.S.C. § 7703(c), the MSPB's decision to affirm the second ALJ's finding—that the agency would have fired Fleming regardless of her whistleblower status—appears reasonable and rational in light of the record. *See* 5 U.S.C. § 7703(c); *see also Kelliher*, 313 F.3d at 1275-76. The MSPB's conclusion was supported by substantial evidence, was not arbitrary or capricious, and applied the correct law. *See Kelliher*, 313 F.3d at 1276.

### E.  Creation of Hostile Work Environment in Retaliation for Whistleblowing

On appeal, Fleming argues that Russell created a hostile work environment in retaliation for Fleming's whistleblowing and this environment caused Fleming's conduct and performance issues. The MSPB has recognized that the creation of a hostile

work environment is itself a personal action for purposes of the WPA. *Skarada v. Dep't of Veterans Affs.*, 2022 MSPB 17, 2022 WL 2253877, at *5 (M.S.P.B. 2022).

The agency argues Fleming did not properly exhaust her hostile work environment retaliation claim. We need not address that issue because Fleming fails to show Russell created a hostile work environment in retaliation for her February 6, 2006 disclosure about the Dry Tortugas Park project.

The MSPB affirmed the second ALJ's finding that any supervisor-employee conflict arose before Fleming made her protected Dry Tortugas disclosure. That decision is supported by substantial evidence in the record. *See* 5 U.S.C. § 7703(c); *see also Kelliher*, 313 F.3d at 1275-76. Specifically, the MSPB agreed with the second ALJ's conclusion that Fleming's supervisor first reported her concerns about Fleming's conduct to the deciding official Culhane shortly after Fleming was hired. The MSPB also agreed with the second ALJ's conclusion that Fleming's supervisor detailed numerous instances of misconduct by Fleming in the months preceding Fleming's Dry Tortugas disclosure. Accordingly, pursuant to the deferential standard set by 5 U.S.C. § 7703(c), the MSPB's treatment of Fleming's hostile work environment arguments was reasonable and rational in light of the record. *See* 5 U.S.C. § 7703(c); *see also Kelliher*, 313 F.3d at 1275-76.

## V.    CONCLUSION

We dismiss Fleming's petition for review as to the MSPB. We deny Fleming's petition for review as to the agency because

23-10962                Opinion of the Court                21

the MSPB's decision was not arbitrary or capricious or made without regard to law and was based on substantial evidence.

**PETITION DISMISSED IN PART, DENIED IN PART.**